THE PRESBYTERIAN CHURCH OF ALBANY, RESPONDENT, *v.* THOMAS C. COOPER AND STEPHEN D. B. GOLDEN, AS ADMINISTRATORS OF THOMAS P. CROOK, DECEASED, APPELLANTS.

*Mutual agreement to contribute money to pay a church debt — validity of such a subscription — the condition of the subscription that a certain sum be subscribed or paid implies legally binding subscriptions.*

The defendants' testator, Thomas P. Crook, a member and elder of the plaintiff, subscribed $5,000 towards a fund of $45,000 to be raised to pay the principal of a mortgage upon the church, by signing a paper by which the signers promised and agreed to pay to the plaintiff's trustees, on or before three years from the date of the paper, the sums set opposite their respective names, upon the express condition that the sum of $45,000 should be subscribed or paid in for the said purpose, and that if within one year from the said date the said sum should not be subscribed or paid in for such purpose, then the agreement was to be null and of no effect, it being required, to make the subscription binding, that the subscription or contribution should equal the sum of $45,000.

Among the subscriptions were the following, one for $5,000 by the "Ladies Association of the First Presbyterian Church," signed by the lady president of the association, which consisted of such ladies of the church as contributed to its benevolent work, who, at a meeting at which some twenty-five or thirty were present, passed a resolution pledging themselves to raise that sum, one for $500 by "Sunday school, per R. F. Todd," made by Mr. Todd, the superintendent,

and approved and ratified at a meeting of the officers and teachers. The young men of the church, at a regularly organized meeting, also passed a resolution pledging themselves to pay $1,500, and requested the chairman of the meeting to sign the paper, which he did not do.

Crook, who knew and approved of the character and amount of these subscriptions, paid $2.000 on his subscription prior to his death, which occurred on October 10, 1885, at which time $10,868.30 of the entire subscription had been collected. Upon the trial of this action, brought by the plaintiff to compel Crooks' administrators to pay the balance, if due, on Crook's subscription, a judgment was rendered in its favor

*Held*, that it should be reversed as the subscriptions above set forth were all invalid, while valid subscriptions for an actual payment of the full amount were a condition precedent to the testator's liability.

That the fact that the testator, with full knowledge of these imperfect subscriptions, made payments on account of his subscription, while evincing an intention on his part to waive the defects, did not impose upon the defendants the duty of fulfilling any but his legal liabilities, and that as there was no evidence to show that the payment of a part of his subscription by the testator caused the plaintiff to relax any effort, or to incur any obligation or do or omit anything to its prejudice, the element of estoppel was wanting.

APPEAL from a judgment in favor of the plaintiff, entered in Albany county, upon the report of a referee.

Thomas P Crook, a member and elder of the religious society known by the name of the plaintiff, subscribed $5,000 towards a fund of $45,000 to be raised to pay the principal of the mortgage debt existing upon the plaintiff's lot and church edifice. The following is a copy of the subscription paper: "That the undersigned hereby severally promise and agree to, and with the trustees of the First Presbyterian Church in the city of Albany, in consideration of one dollar to each of us in hand paid, and of the agreements of each other in this contract contained, to pay, on or before three years from the date hereof, to said trustees, the sum set opposite our respective names, and upon the express condition, and not otherwise, that the sum of forty-five thousand dollars in the aggregate shall be subscribed or paid in for the purpose hereinafter stated, and if, within one year from the date, said sum shall not be subscribed or paid in for such purpose, then this agreement to be null and of no effect. The purpose of this subscription is to pay off the mortgage debt of forty-five thousand dollars, now a lien upon the church edifice of said church, and the subscription or

contribution for that purpose must equal that sum in the aggregate to make this agreement binding Dated May 18, 1884."

The referee found that the full sum of $45,000 was subscribed or paid for the purpose specified in the subscription paper; that the subscriptions were solicited and obtained by the trustees and officers of the plaintiff; that the defendant's intestate, Mr Crook, actively promoted the raising of the subscription, that he paid $2,000 thereon; that he died October 10, 1885; that $10,868.30 of the entire subscriptions were collected by the plaintiff before Mr Crook's death; that $10,500 thereof had then been paid in reduction of the principal of the mortgage debt, of which $7,000 were paid upon the express approval of Mr. Crook, before the same became due.

Among the subscriptions made was one of $5,000 by the " Ladies Association of the First Presbyterian Church." This association consisted of such ladies of the church as contributed to the benevolent work of the church." They did not sign any articles of association. Some twenty-five or thirty met together. One of their number presided and a resolution was adopted pledging themselves to raise $5,000, the payment to be according to the terms of the above subscription paper, which the lady president signed in the above style. Another subscription was " Sunday-school per R. F. Todd, $500." This was made by Mr. Todd, the superintendent of the school, and approved and ratified by a meeting of the officers and teachers.

The young men of the congregation, in a meeting regularly organized, passed a resolution pledging themselves to raise, " by entertainments or otherwise, $1,500 towards the paying of the $45,000 mortgage upon the church, and that the chairman be requested to sign and forward tht resolution to the treasurer of the board of trustees." This was done but the subscription paper was not signed.

Mr. Crook knew the character and amount of the above so-called subscriptions and expressed his approval of them They had not been paid at the time of his death. The defendants, his administrators, refusing to pay the balance remaining unpaid at his death, the claim therefor was with the approval of the surrogate referred, and upon the trial the judgment appealed from was recovered.

*Ward & Cameron,* for the appellants.

*M. Hale,* for the respondent.

LANDON, J.:

Assuming that the subscription paper signed by Mr. Crook was in such form as to constitute, in connection with the subscriptions of others, and the implied promise of the plaintiff to apply the money to the purpose mentioned, a valid contract between him and the plaintiff, still we think the conditions were not so far performed as to make his conditional promise to pay an absolute promise.

The subscription was "upon the express condition, and not otherwise, that the sum of $45,000 in the aggregate shall be subscribed or paid in for the purpose hereinafter stated, and if within one year from the date said sum shall not be subscribed or paid in for such purpose, then this agreement to be null and of no effect." Plainly valid subscriptions or actual payments to the amount of $45,000 were contemplated as the condition precedent to absolute liability. (*N. Y. Exchange Co,* v. *De Wolf,* 31 N. Y , 273.) The subscription of $5,000 by the "Ladies' Association" clearly was not legally binding upon the twenty-five or thirty ladies who assembled and passed the resolution to raise the money, but did not pass it to make the subscription. They had no actual organization such as rend·ered the association as such capable to contract. Their president, who wrote the name of the association to the paper as a subscriber for the $5,000, had no authority to bind any one but herself, and this she did not undertake to do. She did not write her own name to the subscription paper. The entire transaction was simply a testimonial of their good will and of their willingness to try to raise the sum named, but it lacks the essential of capacity to contract and of a valid contract. The resolution of the "young men of the church" is invalid for the same reasons.

The subscription "Sunday school by R. F. Todd" is invalid. Mr. Todd did not assume to bind himself. He assumed to be the agent of a "Sunday school," which was incapable of binding itself as a school by any form or agent it might employ or designate. Mr. Todd, by making this subscription, simply represented that he had all the power and authority the Sunday school could give him, but as it could give no efficient power, he cannot be presumed to

have represented that he had any , and, therefore, does not occupy the position of an agent who represents himself to hold the power he does not possess, to bind a principal, who, if existing, could bind himself, as in the case of *Union Hotel Co.* v. *Hersee* (79 N Y , 455), cited by the plaintiff.

The plaintiff contends that the defendant, with full knowledge of these imperfect subscriptions, waived their imperfections. No doubt he did so to the extent that he made payments, and we may believe that if he had lived he would have waived them still further. But death devolved upon his representatives, his legal liabilities, not the fulfillment of his benevolent purposes. There is no evidence to the effect that the payment of a part of his subscription by Mr Crook, caused the plaintiff to relax any effort or incur any obligation, or do or omit anything to its prejudice. The element of estoppel is wanting, and without it a waiver of the condition precedent essential to the obligation of the contract cannot be presumed. The plaintiff cites *Hutchins* v *Smith* (46 Barb , 235), and *Dutch Church* v. *Brown* (17 How Pr., 287). But in both of those cases the plaintiff did, at the request of the defendant, acts which would be to the plaintiff's prejudice if the subscriptions were invalid.

The judgment must be reversed, the referee discharged new trial granted, costs to abide the event.

LEARNED, P. J. ; BOCKES, J , concurred.

Judgment reversed, new trial granted referee discharged, costs to abide event.